BOZIDAR RACICH *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF BOONE, Defendant-Appellee.

Second District   No. 2—92—1315

---

Opinion filed December 22, 1993.—Rehearing denied January 21, 1994.

Curtis R. Tobin II, of Johnson, Tobin & Ramon, of Belvidere, for appellants.

Roger T. Russell, State's Attorney, of Belvidere, and Barbara A. Chasnoff, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The plaintiffs, Bozidar and Josephina Racich, appeal from a ruling of the circuit court of Boone County denying their request for rezoning of their 87-acre parcel of land in Boone County from A-1 agricultural to R-1 single-family residential. We affirm.

The plaintiffs purchased two adjoining parcels of 20 and 67 acres in 1988 for about $2,100 per acre. Both were zoned A-1 at the time. The following year the plaintiffs applied to the zoning board of appeals of Boone County for a change of zoning from A-1 to R-1 single-family residential so they could develop a residential subdivision. The county planning department recommended denial of the petition based on its rating of the land under the county's land evaluation site assessment system (LESA), which evaluates the viability of sites for ag-

ricultural uses. The plaintiffs' land was rated at 233.2 points out of a possible 300. Under the system, the county planning office recommends against rezoning from A-1 to R-1 any parcel that receives a rating of 200 or more points. Part one of the LESA system consists of a land evaluation in which soils are rated on a scale of zero to 100. A rating of 76 or more points indicates the land is prime agricultural land. The plaintiffs' land was rated 84.2. The second part of the LESA system entails a site assessment in which the parcel in question is rated on a scale of zero to 200 based on 14 factors, including percentage of land feasible for farming, slope of the tract, percentage of land within a half-mile being used for agriculture, compatibility with surrounding uses and zoning, proximity to sewers and water mains, suitability of the tract for a septic system, accessibility by roads, distance from municipal limits, whether the rezoning request is in concert with the county's land use plan, and whether the tract is within the county's growth corridor. The plaintiffs' land was rated at 149 points.

Between 1985 and 1989, 38 petitions were filed in the county for rezoning from A-1 to residential. Of those, 8 petitions were withdrawn, 28 were approved, and 2, including the plaintiffs', were denied. Of the 28 petitions that were approved, two developments scored more than 200 points on the LESA system.

On March 28, 1989, the zoning board of appeals of Boone County held a public hearing on the plaintiffs' application and thereafter unanimously recommended denial of the zoning change. On April 5, 1989, the county building plats and zoning committee conducted a hearing on the application and also thereafter unanimously recommended denial. The county board unanimously denied the application on April 12, 1989, with one abstention. The plaintiffs filed the instant action in the circuit court on July 6, 1989, seeking a declaratory judgment and injunctive relief against the county. Following a bench trial, a memorandum decision upholding the validity of the A-1 zoning was filed on July 17, 1992, by the circuit court. This appeal followed.

The plaintiffs contend on appeal that A-1 zoning restriction on their land is arbitrary, unreasonable and discriminatory in violation of the State's zoning enabling statute (Ill. Rev. Stat. 1989, ch. 34, par. 3151 (repealed eff. January 1, 1990) (now codified, as amended, at 55 ILCS 5/5—12001 (West 1992))) and denies the plaintiffs due process and equal protection by taking their property for public use without compensation. For the following reasons, we affirm.

■ County zoning laws are presumed valid (*Smeja v. County of Boone* (1975), 34 Ill. App. 3d 628, 631; *La Salle National Bank v.*

*County of Cook* (1957), 12 Ill. 2d 40). The parties attacking the validity of a zoning law must prove by clear and convincing evidence that the law as applied to their land is arbitrary and unreasonable and bears no substantial relation to public health, safety or welfare. (*Exchange National Bank v. County of Cook* (1962), 25 Ill. 2d 434, 439-40.) On appeal, the circuit court's judgment will not be disturbed unless it was against the manifest weight of evidence. *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 516-17.

■ Illinois cases examining the validity of zoning restrictions routinely analyze the restrictions according to factors first articulated in *La Salle National Bank* and often repeated in other zoning cases. These factors include (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by particular zoning restrictions; (3) the extent to which the lowered property value promotes public health, safety, morals or general welfare; (4) the relative gain to the public as compared to the hardship imposed on the property owner; (5) the suitability of the subject property to its currently zoned purpose; and (6) the length of time the property has been vacant as zoned. (*La Salle National Bank,* 12 Ill. 2d at 46-47.) Two other factors that courts will consider are the need for the use proposed by the property owner and the care with which the community has undertaken its development planning. *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 378.

Although no one factor is determinative, a primary concern is whether the property in question is zoned in conformity with surrounding uses and whether those uses are uniform and established. (*La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 309.) This factor favors the defendant in this case because the predominant use in the area surrounding the plaintiffs' property is agricultural. Most of the land immediately adjacent to the subject land is either agricultural or undeveloped conservation district land. The parcel is bounded on the east and south by the Boone County conservation district, an open area used as a forest and nature preserve. These tracts are zoned A-1 agricultural. To the immediate west of the plaintiffs' land is an A-1 tract that is currently being farmed. To the north of the parcel in question is a residential subdivision that is zoned A-1 but was developed about 20 years ago when it was not necessary to seek rezoning in order to plat a subdivision.

While it is true, as the plaintiffs point out, that the conservation district land is not being used for farming, it is zoned agricultural. Furthermore, as undeveloped land, its current use is certainly more farm-like than residential. The plaintiffs also claim that the county

was too restrictive in focusing largely on a half-mile radius of the plaintiffs' land when it determined the dominant character of the surrounding area. The plaintiffs point out, and use maps show, that several developments are located within about two miles of the site in question, indicating that at least some of the existing use of nearby land is residential. However, this alone does not indicate that the county was arbitrary in setting a half-mile as the key determinant in assessing nearby uses. Thus, it is quite clear that the dominant use in the area nearest the plaintiffs' land is agricultural or open space. It certainly cannot be argued that agricultural use is out of step with the surrounding area.

Another factor in judging the validity of a zoning ordinance, the diminution of land value, would seem at first blush to favor the plaintiffs, who produced testimony at trial that their land would be worth more than double its current value of $183,000 if the R-1 zoning were permitted. The impact on property values is a valid concern when determining the validity of a zoning restriction (*People ex rel. Alco Deree Co. v. City of Chicago* (1954), 2 Ill. 2d 350, 358), but it is not by itself sufficient to invalidate a zoning restriction. (*American National Bank & Trust Co. v. Village of Oak Lawn* (1979), 81 Ill. App. 3d 952, 960.) In the present matter, the plaintiffs' property value has not been destroyed. They bought the land knowing it was zoned A-1 and paid what it was worth as agricultural land. Their estimated loss of $207,000 is an expectancy loss only; their land is still worth at least as much as they paid for it—$2,100 per acre. A loss of a windfall is not a compelling argument against the validity of a zoning ordinance. *Glenview State Bank v. Village of Deerfield* (1991), 213 Ill. App. 3d 747, 762.

Still, the plaintiffs have suffered some loss, and this must be balanced against the gain to the welfare of the public. (See *Chicago Title & Trust Co. v. Village of Skokie* (1978), 60 Ill. App. 3d 221, 233-34.) In this case the public welfare is served by retaining the A-1 zoning. Boone County places great importance in its land use planning on preserving agricultural lands, a finite resource. We have previously determined that the public interest in preserving good farmland is "obvious." (*Wilson v. County of McHenry* (1981), 92 Ill. App. 3d 997, 1002.) Given that the plaintiffs suffered no real loss of value and the legitimate interest of the county in preserving good farmland, the denial of the plaintiffs' rezoning request was not manifestly unreasonable.

The plaintiffs counter that their land is not truly suited for its zoned purpose. The plaintiffs produced testimony at trial from John

Engelson, who has farmed in Boone County for many years and was a prior owner of the parcel in question. He testified that the parcel in question was the only land he ever farmed that did not provide a good return. Keith Engelkens, who farmed the property in 1992, testified that he did not expect to earn enough from the land to require him to pay any rent for the land to the plaintiffs. Al Maiden, a land appraiser, testified for the plaintiffs that the parcel was not economically viable as a farm.

The State counters by pointing out that the plaintiffs' land is rated by the county soil maps as having good-quality farm soil and that the lack of profit for the most recent years can be attributed in part to an extended period of drought. The question for us is not whether a parcel of land is or is not profitable farmland but whether the parcel is no longer suited to its zoned purpose. (*La Salle*, 12 Ill. 2d at 46-47.) Given the high point total assigned the parcel by the LESA system and the rating of the soil as prime agricultural, the land would appear still viable for its zoned purpose.

The key issue in the present matter is whether the LESA rating system, upon which the county based its denial of the plaintiffs' rezoning request, is a reasonable yardstick for determining when a parcel should be rezoned. If LESA is a reasonable measuring tool, then rezoning decisions based on it are not arbitrary, capricious or lacking substantial relation to the general welfare.

To begin with, it is quite clear that Boone County has undertaken careful, comprehensive planning of its development, which bolsters the presumption of the validity of a zoning restriction. (*Wilson*, 92 Ill. App. 3d at 1002.) In 1974, Boone County adopted a land-use plan, which for the first time identified a region of land that would be considered a growth corridor, that is, undeveloped land which would be most appropriate to future residential development. The plaintiffs' land falls within that corridor. The county updated its plan in 1981 and 1991. The comprehensive plan identifies the maintenance of agriculture as a prime objective of the county.

The LESA system's twofold rating is weighted in favor of preserving good farmland. We have already noted that this is a valid basis for making zoning decisions. The first part of the LESA rating, which counts for one-third of the point total, looks exclusively to the quality of the soil. The second half, which counts for two-thirds of the rating, looks to 14 factors, some of which again take soil quality into account. We note that those 14 factors track some of the considerations articulated in *La Salle* and other zoning cases in that they consider the zoning and uses of nearby tracts and the need for the pro-

posed use. These are appropriate bases for setting point totals. Other factors among the 14 include such practical concerns as accessibility by roads and proximity to towns and essential services. These, too, are appropriate bases.

The plaintiffs' assessment expert, Al Maiden, testified that the LESA score for the plaintiffs' land should be between 200 and 210. However, this is still higher than the 200-point threshold set by the county planning office for determining whether to recommend that the county board approve rezoning. We do not mean to indicate that the 200-point LESA score should be adopted by the county board as a bright-line test for approving and denying rezoning applications, and we do not perceive that the county has used it as such. Indeed, the county board has twice seen fit to approve rezoning for parcels that received LESA scores above 200. These exceptions do not suggest that the county acted arbitrarily in denying the plaintiffs' request. To the contrary, they suggest that the county board has not followed the LESA system blindly but has exercised its prerogative—its duty—to go beyond the raw score of LESA and base its rezoning decisions on the totality of circumstances that arise in each case. All zoning cases must be decided on their unique facts. *Schmidt v. City of Berwyn* (1985), 134 Ill. App. 3d 36, 46.

■ We agree with the trial court that the LESA criteria are reasonable, rationally related to legitimate zoning concerns, and have been applied by the county consistently.

The plaintiffs place much emphasis on the fact that their land is located within an area designated by the county as a growth corridor. This is one of the LESA factors and was taken into consideration by the county. While it is uncontested that the land does fall within this region, the plaintiffs have not shown how this one factor makes the county's refusal to rezone their land arbitrary. Nowhere in the county's planning documents, which were incorporated into the record on appeal, does the county state that land falling within the corridor must be earmarked for residential development. Rather, the planning guidelines suggest that whatever residential development may be deemed appropriate ought to be limited to that corridor.

The plaintiffs produced witnesses at trial who stated that the land in question is best suited to residential development and that the trend in the area of the parcel is residential. Also, the plaintiffs note that their land is near U.S. 20, a main travel artery, and its soil was shown to be excellent for septic systems and wells, factors which make the land well-suited to residential development. We have no reason to doubt any of the plaintiffs' claims, but they do not mandate a

318

finding that the county's denial of their application for residential zoning was arbitrary. The day may come when the county will deem it appropriate to rezone the plaintiffs' land, but the plaintiffs did not show by clear and convincing evidence at trial that the time must be now. The trial court's judgment affirming the county board was not against the manifest weight of evidence.

The judgment of the circuit court of Boone County is affirmed.

Affirmed.

BOWMAN and COLWELL, JJ., concur.