TERRY THORNBER *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF
NORTH BARRINGTON *et al.*, Defendants-Appellees.

Second District    No. 2—00—0368

Opinion filed April 20, 2001.

Daniel C. Shapiro, of Moss & Bloomberg, Ltd., of Bolingbrook, for appellants.

Arthur L. Klein, Hal R. Morris, Ari P. Fisz, and Amy Maldonado, all of Arnstein & Lehr, of Chicago, and J. William Braithwaite and Nancy S. Harbottle, both of Arnstein & Lehr, of Hoffman Estates, for appellee Village of North Barrington.

Gregory H. Furda, Joel M. Hammerman, and Lynn M. Hanley, all of Sidley & Austin, of Chicago, for appellee AT&T Wireless P.C.S., Inc.

Mark S. Bernstein and Richard A. Saldinger, both of Barack Ferrazzano Kirschbaum Perlman & Nagelberg, of Chicago, for appellee SprintCom, Inc.

Timothy J. Patenode, Stewart T. Kusper, and Lisa C. Sullivan, all of Kat-

ten, Muchin & Zavis, of Chicago, for appellee Chicago SMSA Limited Partnership.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiffs, Terry Thornber and Ruth Thornber and other owners of residential property located in North Barrington, Illinois, filed a complaint against the Village of North Barrington; Ameritech Mobile Communications, n/k/a Chicago SMSA Limited Partnership; Sprint-Com, Inc.; and AT&T Wireless P.C.S., Inc., seeking invalidation of an amendment to North Barrington's zoning ordinance that allowed construction of a cellular telecommunications monopole at the village hall. Plaintiffs challenged the validity of the ordinance on the grounds of. improper zoning, spot zoning, and contract zoning. The matter proceeded to a bench trial. At the close of plaintiffs' case, the trial court entered a directed finding in favor of defendants on the contract zoning claim and dismissed as moot the portion of the complaint seeking to enjoin construction of the cell tower at the village hall, since it had already been completed. At the close of all the evidence, the trial court entered judgment in favor of defendants on the counts of plaintiffs' complaint for improper zoning and spot zoning. On appeal, plaintiffs contend that the directed finding on the count for contract zoning and the judgments in favor of defendants on the counts for unlawful zoning and spot zoning are against the manifest weight of the evidence. For the following reasons, we affirm.

The Village of North Barrington is an Illinois municipal corporation. It is a small community comprising five square miles. It is composed of approximately 2,500 residents living in 1,000 households. Plaintiffs are a group of homeowners who reside in the vicinity of the North Barrington village hall. They organized an entity known as "NOPE," an acronym for "Neighbors Opposed to Pole Encroachment." Plaintiffs live within one-half mile of the village hall and purchased their homes prior to March 1998, when a cellular facility was erected on the village hall property.

The zoning ordinance at issue is known as the Village of North Barrington Ordinance No. 724. Village of North Barrington, Ill., Zoning Ordinance Amendment, Ordinance No. 724 (eff. July 21, 1997). The zoning ordinances for the village established three residential zoning districts, R-1, R-2, and R-3, categorized by the size of the property; a golf course district; an office and research district; and a business district. In 1997, the official zoning map of the village identified the location of various zoning districts within the village boundaries. Although the village provided for zoning in the above categories, the property within the village had no zoning districts for business, com-

mercial, or industrial uses. The entire village was zoned for residential uses.

In 1991, the village amended its zoning ordinance to permit, by special use, the construction and operation of a municipal government facility on property owned by the village and zoned for residential uses. The village hall was constructed in 1992 on a 10-acre parcel pursuant to the special use ordinance. The village hall property encompasses a municipal government building where employees are situated and public meetings are conducted, a 50-car asphalt parking lot, and parking lot pole lighting. Although zoned residential R-1, the village hall property has not been used for residential purposes since the construction of the municipal government facility in 1992.

Defendants include the Village of North Barrington and providers of cellular communication services, Ameritech, SprintCom, and AT&T Wireless. Cellular and personal wireless communications are provided to subscribers through an integrated network of cell facilities. The cell facility includes an antenna mounted on a free-standing monopole or similar structure of sufficient height. Electronic equipment associated with the tower is maintained in a shed.

In 1993, defendant Ameritech identified service gaps in its cellular network and sought to erect a wireless facility at the village hall site. At the time, the village's zoning ordinances did not contain any provisions specifically addressing the placement or construction of cell facilities within the village. It did address the use of antennae, which were permitted uses in all zoning districts but contained a height restriction. Thus, Ameritech sought a height variance for the antenna required of its planned cellular facility. The village zoning board of appeals held a public hearing on September 14, 1993, and voted to deny Ameritech's request. As a result, Ameritech withdrew its application.

Instead, Ameritech constructed a cellular facility on residentially zoned property on the border of North Barrington in unincorporated Lake County. At the time of the construction, there were no ordinances prohibiting or regulating the construction of cell facilities in Lake County. Village officials considered the site of the Ameritech tower to be a major gateway to the village that was readily visible to many residents. Since the Village of North Barrington was unable to prevent the construction of the Ameritech tower, it passed Resolution No. 980, disapproving of the cell facility at that location.

The Lake County facility did not solve Ameritech's coverage problems in North Barrington. On April 11, 1997, Ameritech's outside counsel corresponded with the village attorney, expressing a renewed desire to locate a cell facility on village property. The village officials met to discuss Ameritech's renewed request and the village's lack of

any ordinance specifically governing cell facilities. The village determined that there was a need to address the future placement and construction of cell facilities within the village boundaries by way of amendments to its zoning ordinances.

Under village procedures, the plan commission makes recommendations concerning amendments to zoning ordinances. Those recommendations are then sent to the village board for decision. The plan commission met to discuss a proposed amendment to the zoning code to make cellular facilities a special use in areas zoned residential R-1 and a permitted use on municipal property and to amend the height restrictions on antennae to allow for the cellular facility monopole. After consideration of public comment on the proposed text amendment, the plan commission recommended consultation with experts and consultants before revision of the proposed ordinances. The proposed amendments were rejected by the plan commission.

After consideration of the recommendations of the plan commission, and two meetings with public comment, the village board passed a comprehensive wireless ordinance, known as Ordinance No. 723 (Village of North Barrington, Ill., An Ordinance Amending the Village of North Barrington Municipal Code by Adding Title XII, Telecommunications, Chapter 1 "Personal Wireless Service Facilities," Ordinance No. 723 (eff. July 21, 1997)), and Ordinance No. 724 (Village of North Barrington, Ill., Ordinance Amendment, Ordinance No. 724 (eff. July 21, 1997)). The protection of the roadway vistas on village gateways and minimizing the visibility of future wireless facilities from the greatest number of residents were paramount considerations. Without any regulation, the village trustees believed that cellular providers would continue to locate on village borders as Ameritech had done in 1993. If the towers were located on their own public site, the village would obtain and maintain control over the construction of cellular towers. Further, the location of the tower on village property would enable the collection of revenue to be used for public benefit.

Ordinance No. 723 contains detailed and specific regulations on height, setbacks, screening, and other aesthetic factors, as well as safety regulations for cellular facilities. It also mandates the co-location of cellular facilities, to prevent against the construction of numerous monopoles by various cellular providers. The village board also passed Ordinance No. 724, a text amendment, that allowed cellular communication facilities to be a permitted use on the village hall property and a special use on all property zoned R-1, provided that the cell facility comply with village Ordinance No. 723.

On July 28, 1997, the village approved Ameritech's proposal for a cellular facility on village hall property, and negotiations for the terms

of a lease ensued. On August 11, 1997, the village board met and approved a lease with Ameritech for the cellular tower on village property. However, the lease was not executed until November 1997.

Ameritech's cellular monopole was constructed on village hall property and became operational in 1998. Later, defendants Sprint and AT&T obtained permission to co-locate antennae on Ameritech's cellular monopole.

Plaintiffs filed their original complaint against the Village of North Barrington and Ameritech on July 13, 1997. In count I, plaintiffs sought a declaratory judgment that the portion of Ordinance No. 724 allowing cell facilities as a permitted use on the village hall property was unconstitutional because it was arbitrary, capricious, and bore no reasonable relationship to the public health, safety, or welfare. Count II sought a declaratory judgment that the same portion of Ordinance No. 724 constituted illegal spot zoning. Count III sought an injunction preventing the construction of the Ameritech cell tower on village property. Later, the complaint was amended to add a fourth count that Ordinance No. 724 was passed by the village in exchange for an agreement with Ameritech to enter into a lease and, therefore, constituted illegal contract zoning. Thereafter, the complaint was amended to name Sprint and AT&T as additional defendants.

The case proceeded to a bench trial. Twenty-three witnesses testified in plaintiffs' case in chief: nine plaintiffs, five village trustees, the village president, the president of the zoning board of appeals, two Ameritech employees, Ameritech's outside consultant, the Cuba Township assessor, and three opinion witnesses. The opinion witnesses testified on alternate sites for the Ameritech facility, property values, and land planning issues. At the close of plaintiff's case, the trial court entered a directed finding in favor of defendants on the count of the complaint for contract zoning. It also dismissed as moot the portion of the complaint that sought an injunction against the construction of the cellular tower, since the tower was already constructed and operational.

Defendants called eight witnesses: an employee of the Lake County sheriff's office, who testified on the manner in which cellular services benefitted citizens of the county; employees of Ameritech and Sprint, who testified on the manner in which the cell facility enhanced public access to emergency services; a Sprint engineer, who testified concerning gaps in coverage; two real estate appraisers concerning the impact of the tower on adjacent property; and two land planners, who testified that the ordinance was based on reasoned land planning principles.

After 16 days of testimony, the trial court entered judgment in

favor of defendants on the count for spot zoning and the count that challenged the constitutionality of the ordinance as arbitrary and capricious. On appeal, plaintiffs contend that the directed finding on the count for contract zoning was against the manifest weight of the evidence. They further assert that the judgment on the counts concerning the constitutionality of Ordinance No. 724 and for spot zoning was against the manifest weight of the evidence. There are no issues raised concerning the constitutionality of Ordinance No. 723 or the dismissal as moot of the count of the complaint seeking to enjoin the construction of the cellular facility.

■ Municipal enactments enjoy a presumption of validity. *Chavda v. Wolak*, 188 Ill. 2d 394, 398 (1999); *Rockford Blacktop Construction Co. v. County of Boone*, 263 Ill. App. 3d 274, 278-79 (1994). Evidence of the municipality's careful, comprehensive planning of development bolsters the validity of the zoning restrictions. *Racich v. County of Boone*, 254 Ill. App. 3d 311, 316 (1993). The presumption of validity is overcome when the party challenging the zoning ordinance proves, by clear and convincing evidence, that the ordinance is unreasonable, arbitrary, and bears no substantial relationship to the public health, safety, morals, or welfare. *Chavda*, 188 Ill. 2d at 398; *Cosmopolitan National Bank v. County of Cook*, 103 Ill. 2d 302, 310 (1984); *County of Cook v. Priester*, 62 Ill. 2d 357, 368 (1976). The trial court's ruling on a challenge to a municipal ordinance will not be reversed on appeal unless it is against the manifest weight of the evidence. *Racich*, 254 Ill. App. 3d at 314.

■ We first address the trial court's judgment in favor of defendants on the count of the complaint challenging the constitutionality of Ordinance No. 724. The due process clause prevents the arbitrary and unreasonable exercise of a municipality's police power to zone. The touchstone of constitutionality of any regulation is whether the regulation bears a reasonable relationship to the public interest and is a reasonable method to accomplish the desired objective. See *Opyt's Amoco, Inc. v. Village of South Holland*, 149 Ill. 2d 265, 269-70 (1992). A municipal regulation is constitutional, on its face, if it is rationally based. *City of Carbondale v. Brewster*, 78 Ill. 2d 111, 115 (1979). Under this test, the court must determine whether the regulation is rationally related to a legitimate governmental interest. If the regulation bears a rational relationship to the public health, safety, or welfare and is neither arbitrary nor discriminatory, the requirements of due process are met. *City of Wheaton v. Sandberg*, 215 Ill. App. 3d 220, 227 (1991).

To invalidate the ordinance on constitutional grounds, plaintiffs had the burden of proving, by clear and convincing evidence, that the ordinance is arbitrary, unreasonable, and bears no relation to the pub-

lic health, safety, or welfare. *La Grange State Bank v. Village of Glen Ellyn*, 227 Ill. App. 3d 308, 316 (1992). If there is any conceivable basis for finding a rational relationship, the ordinance will be upheld. On appeal, plaintiffs must illustrate that the trial court's ruling upholding the constitutionality of the village ordinance was against the manifest weight of the evidence. *Cosmopolitan National Bank v. County of Cook*, 103 Ill. 2d 302, 310 (1984); *Village of Algonquin v. Village of Barrington Hills*, 254 Ill. App. 3d 324, 331 (1993).

■ In upholding the validity of the village ordinance on constitutional grounds, the trial court found that it was consistent with the village's comprehensive plan, was based on generally accepted planning principles, was consistent with the preservation of residential densities, and that there was no significant financial impact to adjacent properties. The trial court further found that the ordinance contributed to the public health, safety, and welfare by allowing the improvement of wireless communications and access to emergency services and was consistent with the special nonresidential use granted to the village hall property. Additionally, the trial court found that the ordinance was the product of reasoned and principled decision-making on the part of village officials. For these reasons, the trial court found Ordinance No. 724 to be constitutional on its face.

There is sufficient evidence to support the trial court's finding that the cellular facility promoted the public welfare. The defendants presented unrebutted testimony that the village hall cellular facility serviced hundreds of emergency 911 calls and provided service for the reporting of highway-related emergencies. Further, there was evidence that the cellular facility was used to enhance the ability of the Lake County sheriff's office to provide emergency services within the county.

Plaintiffs assert that there was *no* evidence of public benefit by placing the cellular facility on village property rather than another location. Plaintiffs attempted to prove this *negative* fact by presenting evidence of a detrimental effect upon their properties. Such proof was substantially diminished by the homogeneous zoning in the village. It is undisputed that all real property in the Village of North Barrington is zoned for residential use. Therefore, the construction of a cellular facility at any other location within the village would cause similar detrimental effects with all possible adjacent residential landowners. Plaintiffs failed to establish that there was somewhere else in the village where the negative effects would be minimized and the net benefits maximized so that there was little or no public benefit by selecting the village property. Furthermore, Ameritech submitted evidence that the monopole at the village site would, and did, remedy the coverage problems and was the best location for the facility because it

was more evenly spaced between the surrounding cell sites and would optimize coverage. Likewise, Sprint submitted evidence that the village hall site was almost directly in the center of its coverage gap and provided optimum coverage.

There is ample evidence to support the trial court's finding that the ordinance was not arbitrary and capricious but, instead, the product of reasoned and principled decision-making by village officials. The ordinance at issue was passed only after intensive debate and consideration by the village. Further, the evidence indicated that the village passed the ordinance in an effort to gain control over future placement of cellular facilities in its vicinity, which was a legitimate consideration given the history of the placement of cellular facilities just outside the village boundaries. Based on the evidence presented at trial, the trial court's ruling upholding the constitutionality of Ordinance No. 724 on its face was not against the manifest weight of the evidence.

In their briefs, defendants assert that plaintiffs challenged the validity of the municipal ordinances on their faces rather than as applied. In support of this proposition, defendants refer to rulings on motions *in limine* wherein plaintiffs purportedly conceded that they made no challenge to the ordinances as applied. The record is devoid of any such concession by plaintiffs during motions *in limine*. Defendants further assert that no evidence was submitted to establish that the ordinance was invalid as applied or that this issue is waived on appeal. Our review of the record reveals that evidence was presented in an effort to establish that the ordinances were unconstitutional as applied and that the trial court considered the validity of the ordinance as applied in its ruling. During oral argument, defendant Ameritech conceded that the issue of whether the ordinance was challenged on its face, rather than as applied, was blurred. Therefore, we will review the issue on the merits.

■ Our supreme court has developed a list of factors to be considered in determining the validity of a municipal ordinance: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the zoning restrictions; (3) the extent to which the destruction of property values promotes the health, safety, morals, or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed on the plaintiff; (5) the suitability of the property for the zoned purposes; (6) the length of time the property has remained vacant as zoned (*La Salle National Bank v. County of Cook*, 12 Ill. 2d 40 (1957)); (7) the community need for the proposed use; and (8) the care with which the community has undertaken its development plan. *Sinclair Pipe*

*Line Co. v. Village of Richton Park*, 19 Ill. 2d 370, 378 (1960); *Racich*, 254 Ill. App. 3d at 314. Although no one factor is determinative, a primary concern is whether the property in question is zoned in conformity with surrounding uses and whether those uses are uniform and established. *La Grange State Bank v. County of Cook*, 75 Ill. 2d 301, 309 (1979). The validity of the ordinance in question will be determined in light of the circumstances of the individual situation. *Lambrecht v. County of Will*, 217 Ill. App. 3d 591, 594 (1991). The trial court's ruling will not be reversed on appeal unless it is against the manifest weight of the evidence.

■ With respect to the *La Salle* factors, the evidence established that the village hall property was zoned R-1 residential but used for nonresidential purposes pursuant to a special use ordinance since 1991. The location of the cellular facility on village property was consistent with this special use, which was distinguishable from the surrounding residential uses.

Plaintiffs claim a financial impact on their properties by virtue of the cell facility. However, they fail to balance their loss against the public welfare, as required under the *La Salle* analysis. The evidence established that there was a diminution in the value of plaintiffs' properties due to the construction of the cellular tower. However, the degree of diminution ranged from 2% to 30%, depending on the particular parcel of land and the method of calculation utilized by the expert witness.

As plaintiffs acknowledge, there is no place in the confines of North Barrington that a cell facility could be placed that is not adjacent to residential uses. Therefore, it is undisputed that the placement of the cellular tower at any location within the village would have some impact on adjacent residential property. Therefore, the trial court determined, under the *La Salle* analysis, that the public gain by the placement of the cellular facility on village property outweighed the interests of the individual plaintiffs.

There is ample evidence to support the trial court's finding. The evidence was unrebutted that the construction of the cellular facility served the needs of the community at large. Whatever method of calculation was used, it is undisputed that the property values of 8 homes of 1,000 in the village and 8,300 in the township were affected. The village accounted for the limited options it had in locating wireless facilities by encouraging the location on public property that offered the greatest setbacks, screening, and municipal control while minimizing the number of residences affected by the placement of the tower. We determine that the trial court's ruling upholding the constitutionality of Ordinance No. 724 under the analysis of *La Salle* was consistent with the manifest weight of the evidence.

■ Next, plaintiffs argue that the trial court erred by directing a finding in favor of the defendants on the count of the complaint for contract zoning. Plaintiffs assert that the Village of North Barrington amended the existing zoning ordinances to allow the construction of a cellular monopole on village property in exchange for a lease with Ameritech and that this constituted impermissible contract zoning. We disagree.

In *Goffinet v. County of Christian*, 65 Ill. 2d 40 (1976), the Illinois Supreme Court found that conditional zoning is not invalid *per se. Goffinet*, 65 Ill. 2d at 48-51. Rather, the focus must be on the application of the traditional zoning factors enunciated in *La Salle* (*La Salle National Bank*, 12 Ill. 2d 40). See *Goffinet*, 65 Ill. 2d at 51-52; *Nolan v. City of Taylorville*, 95 Ill. App. 3d 1099, 1104 (1981). We have already applied these factors to the ordinance at issue and determined that the trial court's finding of validity was not against the manifest weight of the evidence.

Further, we have substantial doubt whether any issue of traditional conditional rezoning is present here. Unlike *Cederberg v. City of Rockford*, 8 Ill. App. 3d 984 (1972) and *Hedrich v. Village of Niles*, 112 Ill. App. 2d 68 (1969), cited by plaintiffs, here the zoning authority and the property owner are the same entity. Therefore, the fact that Ameritech later leased the property from the village is not remarkable given that the village owned the land that was subject to the rezoning.

In addition, in directing a finding in favor of the defendants on the count for contract zoning, the trial court also considered the credibility of the witnesses and drew inferences from the evidence presented. It was reasonable for the trial court to infer that the ordinances were passed by the village with the knowledge of Ameritech's interest in the village hall site and the possibility of municipal revenue under a lease. However, a municipal ordinance is not rendered invalid under a challenge based on contract zoning merely because the municipality is aware that the change may result in pecuniary benefit. There is no evidentiary support for plaintiffs' claim that the village engaged in a nonuniform bartering of legislative discretion that applied unequally throughout the village. We determine that the trial court's finding in favor of defendants on the count of the complaint for contract zoning was not against the manifest weight of the evidence and was consistent with the traditional interpretation of contract zoning.

■ Finally, we address plaintiffs' appeal from the judgment in favor of the defendants on the count of the complaint for illegal spot zoning. Spot zoning is a change in zoning applied to a small area. Spot zoning is unlawful when the change violates a zoning pattern that is

homogenous, compact, and uniform. *Bossman v. Village of Riverton*, 291 Ill. App. 3d 769, 775 (1997). However, not every reclassification of a single tract of land is void. The test for determining unlawful spot zoning is whether the change is in harmony with a comprehensive plan for use of property in the locality. *Goffinet*, 65 Ill. 2d at 54. To invalidate the zoning ordinances, the plaintiffs were required to present clear and convincing evidence that the amendments to the zoning ordinances violated a comprehensive plan for use of the property in the locality. The trial court's ruling that the ordinances did not constitute illegal spot zoning will not be reversed unless it was contrary to the manifest weight of the evidence.

Plaintiffs confuse spotting an antenna with spot zoning. Ordinance No. 724 added wireless facilities as a special use in *all* property zoned residential R-1 and set the village hall property aside as a permitted use for cellular towers. Unlike the classic case of illegal spot zoning where property is changed from one zoning district to another, the changes here impacted all property zoned R-1 by making wireless facilities either a special use or a permitted use. Plaintiffs take issue with the portion of the ordinance that establishes wireless communications as a permitted use on village hall property. They do not take issue with the remainder of the ordinance, which establishes wireless communication facilities as a special use on *all* property zoned R-1 residential. Since Ordinance No. 724 covered the entire zoning district, and not merely the village hall property, the changes did not disrupt or change any existing zoning classifications. Therefore, the amendments to the zoning ordinances enacted by the Village of North Barrington do not constitute spot zoning.

Moreover, in rejecting the plaintiffs' claim of illegal spot zoning, the trial court found that the ordinances were consistent with the village's comprehensive plan, with generally accepted planning principles, and with the long-standing nonresidential special use of the village hall. In making this determination, the trial court specifically found that the village was unique in that it had no commercial, industrial, or business-zoned areas within its confines. Adopting plaintiffs' argument, if the antenna were located anywhere in the village, it would constitute spot zoning; *ergo*, there is no place in the village where the antenna may be spotted. This contention is inconsistent with the concept of spot zoning. The trial court's finding that Ordinance No. 724 did not constitute illegal spot zoning is consistent with the manifest weight of the evidence.

The judgments of the circuit court of Lake County are affirmed.

Affirmed.

HUTCHINSON, P.J., and GROMETER, J., concur.