2023 IL App (2d) 220255-U
No. 2-22-0255
Order filed July 13, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THOMAS Z. LYS and FRANZISKA B. LYS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 19-MR-891 |
| THE VILLAGE OF METTAWA, CHICAGO TITLE LAND TRUST, as trustee of Land Trust No. 113128, dated May 2, 1988, and W.W. GRAINGER, INC., | ) ) ) ) ) | Honorable |
| Defendants-Appellees. | ) ) | Janelle K. Christensen, Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Birkett and Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*: Neighboring landowners failed to demonstrate that zoning map amendment for already-developed property was arbitrary, unreasonable, or unconstitutional.

¶ 2    In a typical zoning case, a landowner applies to develop and use property for a particular future purpose. In some re-zoning cases, however, the land has already been developed and the re-zoning is necessary to preserve the status quo. This case presents the latter.

¶ 3    Plaintiffs, Thomas Z. Lys and Franziska B. Lys, homeowners in the Village of Mettawa, brought suit against the Village, Chicago Title Land Trust, and W.W. Grainger alleging violations of due process and the Village's zoning ordinances. The trial court granted partial summary judgment in favor of defendants and the Lys's appeal. We affirm.

¶ 4                              I. BACKGROUND

¶ 5    We accept the following allegations as true for the purpose of reviewing the trial court's judgment. *Coley v. Bradshaw & Range Funeral Home, P.C.*, 2020 IL App (2d) 190627, ¶ 16.

¶ 6    This case concerns the land that, through development, would become the headquarters of a Fortune 500 international industrial supply company. In 1998, Grainger purchased approximately 525 acres in unincorporated Lake County, just west of the intersection of Illinois Route 60 (going west and east) and Interstate 294 (going north and south). In 1994, Grainger sought permission to rezone and develop the property. Lake County then passed an ordinance granting the request but limited Grainger to 1.5 million square feet of office space. Lake County Ordinance No. 2934 (Nov. 10, 1994).

¶ 7    The Village of Mettawa, which at the time bordered the Grainger property, filed suit challenging the rezoning. Grainger intervened and, as part of a settlement with the Village, Grainger agreed that its first office building would not be more than 80 feet in height, and "[t]hereafter, no building shall exceed ninety (90) feet in height." *Village of Mettawa v. County of Lake*, No. 94-MR-610 (Cir. Ct. Lake County, Nov. 21, 1995). Grainger then developed its corporate "campus," which included one multi-story office building, parking lots, roadways, lighting, drainage improvements and a pond, "tree preservation areas," landscaped berms, and two gated entrances (with guardhouses) along Route 60. In 2014, Grainger constructed a second office

building, which is its "Data Center." The entire property has been in continuous use and has never been abandoned.

¶ 8      For context, we note that the Village is a low-density municipality, consisting largely of 5-acre "R-1" single-family estates. In 2006, the Lyses, both college professors, purchased their nearly 40-acre property, which shares a 1320-foot boundary with Grainger's property. The Lyses received zoning clearance from the county, and developed their land by building a single-family home, horse stables, and an equestrian facility.

¶ 9      In August 2018, the Village annexed approximately 170 acres, including all of the developed portion of the Grainger property. Village of Mettawa Ordinance No. 830 (Aug. 21, 2018). The annexation ordinance provided that Grainger would enjoy the same development rights as it did under the county's prior zoning and outlined a future planned unit development (PUD), which would include a rezone and the same development rights—*i.e.*, essentially the same variations and permitted uses—as were included in the county's ordinance, such as the 1.5 million square foot floor space restriction, a limitation on all future buildings to a height no greater than 90 feet, and a waiver of the requirement of a minimum number of loading berths for each building. Then in November 2018, Grainger applied for a zoning map amendment to rezone the annexed property from R-1 to O-H, "office/hotel district." Grainger's PUD petition did not seek to make any changes to property but, again, merely sought the same rights it enjoyed under the county's ordinance.

¶ 10     Mettawa's Zoning, Planning, and Appeals Commission (ZPA) held two public hearings at which numerous Grainger executives testified that, although Grainger had approximately 650,000 square feet remaining under its original 1.5 million square foot floor space restriction, there were no future plans for further developing the property. The Village staff's report stated that the

property has been in continuous operation for over 20 years, and that no new changes or development had been proposed. We note that Thomas Lys and one of his attorneys were present at the hearing and questioned witnesses. The ZPA ultimately recommended approval and the Village adopted the PUD as Village of Mettawa Ordinance No. 839 (adopted June 18, 2019). Ordinance 839 is the primary focus of this appeal.

¶ 11    Shortly after the Ordinance 839 was adopted, the Lyses filed a three-count complaint challenging it. The complaint sought declaratory judgment pursuant to section 2-701 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-701 (West 2010)) and injunctive relief. See 65 ILCS 5/11-13-15 (West 2010)). Counts I and II, which were brought against the Village, alleged that the passage of the ordinance violated the Lyses rights to due process. Count I alleged that Ordinance 839 was facially unconstitutional and count II alleged that the ordinance was unconstitutional as applied. U.S. Const., amend. XIV; Ill. Const. 1970, art. 1, § 2; see also 65 ILCS 5/11-13-25(b) (West 2020). Count III sought injunctive relief from Grainger related to additional fencing around the data center.

¶ 12    The trial court entered summary judgment on counts I and II in favor of the Village. 735 ILCS 5/2-1005 (West 2020). With respect to counts I and II, the trial court found that the Lyses had failed to support their claim of a due-process violation on both counts and therefore failed to show that Ordinance 839 was unconstitutional. The court found that Ordinance 839 was not arbitrary or capricious, but rather was supported by a rational basis, again to bring the pre-existing Grainger property into conformity with the Village's development map and zoning ordinances. (The trial court did not rule on count III's request for injunctive relief against Grainger; thus, it remains pending and is not at issue in this appeal.) The Lyses sought and received an immediate-

appealability finding (Ill. S. Ct. R. 304(a)), and the court's rulings on counts I and II are before us now.

¶ 13                                    II. ANALYSIS

¶ 14    Before this court, the Lyses continue to press their claim that the Village disregarded their due-process rights in approving Grainger's PUD and adopting Ordinance 839. The Lyses argue that, beginning with the Village and Grainger's settlement in 1995, Village officials were engaged in a decades-long campaign to annex the Grainger property for what is presumably a substantial amount of tax revenue for the Village. According to the Lyses, under the terms of the 1995 settlement, the annexation ordinance, and the rezoning ordinance (Ordinance 839), Grainger can develop the remaining 650,000 square feet of office space and construct a new building under a height of 90-feet *without* the need for additional approval for such construction from the Village. In essence, the Lyses contend that, through Ordinance 839, the Village corruptly "bargained away" the public's right to restrict Grainger's future development. The Village and Grainger respond that the Lyses claims are without merit, that Ordinance 839 requires Grainger to seek Village approval for any future development, and that the Lyses have failed to show that the Village violated their due-process rights. We agree with the defendants.

¶ 15    As an initial matter, we address the Village and Grainger's argument that because no future development is contemplated at the Grainger facility, the Lyses have suffered no actual injury and thus lack standing to challenge the validity of Ordinance 839. Although there is some intuitive appeal to defendants' argument, it misses the mark. The Lyses complaint, to be fair, is largely a collection of repeated assertions about the "unsightly appearance" of the Grainger campus, "increased light pollution" emanating from the Grainger property, complaints of "increased traffic," and "the intrusive visual effect produced by [the] development of one or more new 90[-

]foot-tall office buildings." Were that all, then defendants' standing challenge would be on more solid ground, but the Lyses do allege constitutional violations, and that is not something a court can or should easily overlook.

¶ 16    As the Lyses's responses point out, there are two sections of the Municipal Code that apply to the Lyses' first two claims. The first is section 11-13-15. 65 ILCS 5/11-13-15 (West 2020). That section provides, in pertinent part, that when any building or structure is constructed or used in violation of a municipal zoning ordinance, "any owner or tenant of real property, within 1200 feet in any direction of the property *** who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding *** to restrain, correct, or abate the violation." *Id*. As noted, the Lyses are neighboring landowners, so as long as a complaint is filed within 90 days of the ordinance it challenges (here it was filed 87 days later, so it was timely), the trial court with jurisdiction over such an action is authorized to issue a restraining order, a preliminary injunction, or a permanent injunction. See *id.* The second relevant statute, section 11-13-25(b) of the Municipal Code (65 ILCS 5/11-13-25(b) (West 2020)) provides that "[t]he principles of substantive and procedural due process apply at all stages of the decision-making process and review of all zoning decisions." Both sections are designed to afford relief to private landowners in cases where municipal officials are slow or reluctant to act, or where their actions do not protect the landowners' interests. *Dunlap v. Village of Schaumburg*, 394 Ill. App. 3d 629, 638 (2009).

¶ 17    The Lyses's amended complaint estimates that under Ordinance 839 their property value will be impaired by "several hundreds of thousands of dollars," but this evidence-free assertion is not dispositive. As we have said before "economic injury is not the only type of injury that may support standing; for example, a real estate developer has standing to assert its right to be free of

arbitrary or irrational zoning actions regarding a particular project." *Waterfront Estates Development, Inc. v. City of Palos Hills*, 232 Ill. App. 3d 367, 371 (1992) (citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.* 429 U.S. 252, 262-63 (1977)). Again, the Lyses allege that the Village violated their due-process rights in approving Grainger's PUD and adopting Ordinance 839. Their timely complaint, under section 11-13-15, which raised a claim of a constitutional violation during a zoning matter under section 11-13-25(b), nevertheless presented a cognizable, justiciable matter for judicial review. Accordingly, even in the absence of any contemplated development, we are confident that, under the statutory authority, the Lyses do have standing. That said, however, we disagree with them on the merits.

¶ 18    Summary judgment is appropriate when the pleadings and evidence on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). "It is well established that it is primarily the province of the municipal body to determine the use and purpose to which property may be devoted, and it is neither the province nor the duty of the courts to interfere with the discretion with which such bodies are vested unless the legislative action of the municipality is shown to be arbitrary, capricious or unrelated to the public health, safety and morals." *La Salle National Bank of Chicago v. County of Cook*, 12 Ill. 2d 40, 46 (1957). Absent some classification based on factors like race or gender that invoke a higher level of scrutiny (not applicable here), when a municipal legislative action, such as a zoning ordinance, is challenged, it is presumed constitutional, and is evaluated under the highly deferential rational-basis test. Under this test, a municipal ordinance will be upheld so long as the law "bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable. [Citations.]" *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 307 (2008). "If there is any conceivable basis for finding a rational relationship, the ordinance will

be upheld." *Thornber v. Village of North Barrington*, 321 Ill. App. 3d 318, 325 (2001). This test is used for both substantive and procedural due process claims (*Napleton*, 229 Ill. 2d at 318-19) and our standard of review is *de novo* (*Passalino v. City of Zion*, 237 Ill. 2d 118, 124 (2010).

¶ 19    After carefully reviewing the record, we agree with the trial court that the Lyses have failed to validate their due-process claims. The record does not disclose any procedural irregularities (far from it, as we discuss below), and like the trial court, we conclude that Ordinance 839 had a valid, rational, constitutional basis.

¶ 20    We begin with the Lyses' procedural due process claim. "Procedural due process is founded upon the notion that prior to a deprivation of life, liberty or property, a party is entitled to ' "notice and opportunity for [a] hearing appropriate to the nature of the case." '" *Passalino v. City of Zion*, 237 Ill. 2d 118, 124 (2010) (quoting *Jones v. Flowers*, 547 U.S. 220, 223 (2006), quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). This ordinarily means notice of a *public* hearing, wherein points may be raised and objections can be voiced. *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164, 183-84 (2002); *Brown v. Air Pollution Control Board*, 37 Ill. 2d 450, 454 (1967) ("a proceeding *** which could affect one's property rights *** [is] governed by the fundamental principles and requirements of due process of law").

¶ 21    The Lyses acknowledge that they received notice regarding the ZPA's quasi-judicial hearings on Grainger's PUD petition, which would become Ordinance 839 and as noted, Thomas Lys and his attorney were both present and spoke at the ZPA hearing. The Lyses also acknowledge that they were aware of the legislative meeting where, after public comment, the Village's board considered and adopted Ordinance 839, but the Lyses did not attend. (The Lyses also do not dispute that they received notices regarding the annexation hearing as well, which became Ordinance 830.) In light of these concessions, the Lyses have short-circuited their own procedural due process

claim. The record unquestionably shows that they were given notice and opportunity to be heard on the rezoning of Grainger's property. When it comes to their procedural rights, that was all the state and federal constitutions required.

¶ 22    But the Lyses contend that there is a finer point to their procedural argument. As part of their "contract zoning" claim, they allege that the Village and Grainger entered into a secret agreement, and thus the Lyses assert that they were *not* given "notice and an opportunity to be heard" regarding the supposed conditions and uses that were not addressed *publicly*. Like the trial court, we determine that the Lyses failed to allege sufficient facts to support their claim, that their claim misunderstands the concept of contract zoning, and that their claim is flatly contradicted by the record.

¶ 23    "Spot zoning is a change in zoning applied to a small area" and "is unlawful when the change violates a zoning pattern that is homogenous, compact, and uniform." *Thornber*, 321 Ill. App. 3d at 328-29. In such a situation, there has been a regulatory capture; that is, illegal contract zoning connotes a transaction wherein both the landowner who is seeking a certain zoning action and the zoning authority itself undertake reciprocal obligations as if it were a bilateral contract. See generally *Goffinet v. Christian County*, 30 Ill. App. 3d 1089, 1098 (1975). In this sense, municipal officials have been "captured" because they are contracting away governmental and public police powers for private purposes. As an example, in the case the Lyses rely on most heavily, *Cederberg v. City of Rockford*, 8 Ill. App. 3d 984 (1972). In *Cederberg*, at the City's insistence, a landowner recorded restrictive covenants limiting permissible business uses on the property as a condition for having the property rezoned, all in derogation of the City's zoning ordinance. *Id.* at 986-89. As we said in that case, "when zoning is conditioned upon collateral agreements or other incentives supplied by a property owner, the zoning officials are placed 'in

the questionable position of bartering their legislative discretion for emoluments that had no bearing on the merits of the requested amendment.' " *Id*. at 987 (quoting *Hedrich v. Village of Niles*, 112 Ill. App. 2d 68, 77 (1969)). We then struck down the re-zoning ordinance, which "was adopted only because of the limitations contained in the restrictive covenant" and the record showed that "the City gave no consideration to the statutory standards of public health, safety, comfort, morals and welfare." *Id*. at 988.

¶ 24    Here, simply put, this was not a case of illegal secret contract zoning, but rather an example of valid conditional zoning after a public hearing. The Lyses have yet to point out any sort of "side deal" between the Village and Grainger. Rather, the record of the annexation and the re-zoning demonstrate that Grainger and the Village jointly proposed permitted uses and variations for the property, with both parties working from the original county ordinance, which Grainger had been operating under for the preceding two decades. Moreover, the record shows that the ZPA and the Village gave significant consideration and heard evidence regarding the impact of the re-zoning on the relevant standards of public health, comfort, morals, and welfare. That Grainger and the Village may have been working together in this *public* process is unremarkable; this happens all the time in the modern era of zoning. Evidence of cooperation in this public process suggests responsible supervision of the utilization of the land by both the Village and Grainger, rather than any sort of illegal collusion.

¶ 25    Instead of pointing to a collateral agreement, however, the Lyses suggest that Ordinance 839 grants Grainger the unlimited right to continue to develop its property—that is, to add 650,000 square feet of floor space and construct a building no taller than 90 feet—without seeking further approval from the Village. That argument is spurious. Relevant here, paragraph Ordinance 839 states as follows:

"Any future development plans for the Subject Property shall be subject to all applicable codes, ordinances, rules and regulations of the Village that are in effect *at the time of submittal of any further development request*, except for allowable gross square footage of office space, building height, parking space size and location and loading berths as varied by the Village within this Ordinance." (Emphasis added.) Ordinance 839 § 3B.

The Lyses assert that this language entitles Grainger to "automatic approval" of any future development plans consistent with those variances. We disagree. Rather, we determine, as Grainger asserts, that the plain language of the ordinance requires a public hearing and Village approval when Grainger submits "any further development request ***." *Id*. The Ordinance clearly states that these variations would be *considered* alongside any future development requests; it does *not* state that such a request would be *automatically* granted.

¶ 26    To the extent the Lyses challenge the variances in Ordinance 839, regarding square footage, building height, etc., *again*, the Lyses received notice of the ZPA hearing and (at least partially) availed themselves of the opportunity to be heard on Grainger's PUD petition and when it comes to procedural due process, that was all that was required. Should Grainger seek further development in the future to *implement* those variations, the Lyses presumably will have notice and an opportunity to be heard on that petition as well. Accordingly, we agree with the trial court that the Village, and Ordinance 839 specifically, did not harm the Lyses' procedural due process rights.

¶ 27    We turn then to the Lyses's arguments regarding substantive due process. When a zoning ordinance is challenged based on substantive due process, we examine the ordinance for arbitrariness using the factors set out by our supreme court in *LaSalle National Bank of Chicago*

*v. County of Cook*, 12 Ill. 2d 40 (1957), and *Sinclair Pipe Line Co. v. Village of Richton Park*, 19 Ill. 2d 370 (1960) (collectively, the *LaSalle* factors).

¶ 28    In *LaSalle*, although the court recognized that each case must be determined on its own facts and circumstances, the court identified six factors that "may be taken into consideration in determining [the] validity of an ordinance": (1) the existing uses and zoning of nearby property, (2) the extent to which property values are diminished by the particular zoning restrictions, (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public, (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner, (5) the suitability of the subject property for the zoned purposes, and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. *LaSalle*, 12 Ill. 2d at 46-47. In *Sinclair*, the court identified an additional relevant consideration: (7) the community's need for the proposed use and the care with which the community has undertaken to plan its land use development. *Sinclair*, 19 Ill. 2d at 378. As with many multi-factor tests, no single factor is controlling. *Harris Bank of Hinsdale v. County of Kendall*, 253 Ill. App. 3d 708, 715 (1993).

¶ 29    The *LaSalle* factors, obviously, are tailored to the typical zoning case, wherein an applicant seeks permission to develop and use the property as opposed to the present case where the property has already been developed, was annexed, and had to be re-zoned. Nevertheless, an analysis of the *LaSalle* factors weighs in favor of the ordinance. With respect to the first factor, the uses and zoning of the property near Grainger's campus are mostly residential; however, the existing use of the property itself is entirely consistent with the Village's "O-H" office/hotel classification and is not incompatible with nearby properties.

¶ 30    Regarding the second factor, no evidence was presented that *any* property values would be impaired by the rezoning. With respect to the restrictions on the land, which have been the same since the county's 1994 ordinance and 1995 settlement agreement. Of particular note, we find in the record that the county determined in 1994 that Grainger's "lands are inappropriate for agricultural preservation." Most of the property itself is wetlands and most of it is not suitable for building. The county's report also found that 5-acre single-family homesites in the area—and residential subdivisions generally—are inefficient forms of housing because of the expenditure of local resources needed to provide utilities (water, stormwater drainage, sewage, etc.) and public services (school districts, police and fire coverage) in sparsely populated areas.

¶ 31    The third and fourth factors are particularly illuminating. There is no evidence of impairment to the Lyses' property value occasioned by the rezoning. Conversely, the re-zoning allows Grainger to continue to operate as it has for over 20 years and to contribute tax revenue to the Village, which promotes the public's health, safety, and welfare. Put simply, local authorities cannot do much without local financial resources. Consequently, as the re-zoning imposes no demonstrated hardship to the Lyses, *any* benefit to the public outweighed their speculated harms.

¶ 32    When it comes to the fifth factor, the property, which has been minimally developed in view of its substantial amount of open space, is suitable to be zoned O-H and maintains the status quo that has been obtained since Grainger began developing the property. With respect to the sixth factor, the property is *not* vacant. It has been used continuously and consistently, which cuts in favor of the ordinance.

¶ 33    Seventh, and finally, the record shows that, throughout the annexation and re-zoning of Grainger's property, the Village acted with commensurate respect for its land-use process and for the integrity of its comprehensive development plan. We need not rely on a presumption of the

ordinance's validity or our deference to local officials (see *Village of Euclid v. Amber Realty Co.*, 272 U.S. 365, when the record overwhelmingly shows that the Village had a reasoned, rational basis for rezoning the property. In short, the record leaves us with the firm and definite conclusion that the Village did not act arbitrarily when it enacted Ordinance 839, and that the Lyses have suffered no substantive due process violation therein.

¶ 34                                    III. CONCLUSION

¶ 35     From the record before us we cannot say as a matter of law that the re-zoning ordinance is out of harmony with the comprehensive planning for the good of the Village of Mettawa. In sum, we reject the Lyses contentions and affirm the judgment of the circuit court of Lake County on counts I and II in favor of the Village. This case is remanded back to the trial court for further proceedings on count III, which remains unresolved.

¶ 36     Affirmed and remanded.